**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

TRENT COLEMAN,

Petitioner,

v. Case No. 8:19-cv-1926-VMC-SPF

SECRETARY, DEPARTMENT OF CORRECTIONS,

Respondent.
_____________________________________/

**ORDER**

Trent Coleman, a Florida inmate, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Upon consideration of the petition, the response in opposition (Doc. 7), and Coleman's reply (Doc. 9), the Court **ORDERS** that the petition is **DENIED**.

**Background**

A state court jury convicted Coleman of three counts of robbery with a firearm. (Doc. 7-2, Ex. 2.) The state trial court sentenced him to life in prison as a Prison Releasee Reoffender. (Doc. 7-2, Ex. 4.) The state appellate court *per curiam* affirmed Coleman's convictions and sentences. *Coleman v. State*, 84 So.3d 1035 (Fla. 2d DCA 2011). Coleman filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, followed by an amended motion. (Doc. 7-2, Ex. 11; Doc. 7-3, Ex. 13.) The state court summarily denied some claims. (Doc. 7-3, Ex. 15.) After

conducting an evidentiary hearing on the remaining claims, the state postconviction court entered a final order denying relief. (Doc. 7-3, Exs. 15-18.) The state appellate court *per curiam* affirmed the order of denial. *Coleman v. State*, 278 So.3d 595 (Fla. 2d DCA 2018).

**Facts**[1]

On July 10, 2009, at approximately 5:48 p.m.,[2] Coleman entered the Wooden Nickel retail store in Tampa, Florida. A mask partially covered his face. Coleman pointed a gun at employee Andrew Meinsen and demanded money. When Meinsen opened the register, Coleman removed all the paper money. Meinsen activated a silent alarm. Coleman also pointed the gun at customer Brittany Pujols and demanded that she take money out of her purse. Pujols removed $5.00, which was all the cash she had, and gave it Coleman.

Another employee, Ray Prather, was in the back of the store when he saw Coleman come in. Prather hid his wallet. Coleman saw Prather and told him to come over, so Prather walked toward the front of the store. Coleman pointed the gun at Prather's chest and asked for money. Prather emptied his pockets, throwing his keys and cell phone on the ground. Coleman told everyone to get on the floor, and backed

[1] The factual summary is based on the trial transcript and appellate briefs.

[2] It appears that the prosecutor misspoke about the time of the offense at one point by questioning a witness about events at 7:48 p.m., not 5:48 p.m. (Doc. 7-2, Ex. 6, p. 178.) However, the rest of the record, including Deputy Joseph Williams's testimony that he responded to the scene at around 5:45 or 5:50 p.m., reflects that the robberies occurred at approximately 5:48 p.m. (*Id.*, pp. 205, 239, 257.)

out of the store. The store's surveillance system recorded the entire incident. Coleman's mask only covered part of his face. Meinsen recalled seeing Coleman's eyes, and all three victims saw Coleman's lower face. Meinsen and Prather recalled observing Coleman's mouth, chin, jawline, and facial hair. Meinsen and Prather both chose Coleman's photo out of a photopack prepared by police, and they were both certain of the identification.

Coleman's brother, Harold Hunter, testified that Coleman was with him at the time of the robberies. However, on cross-examination, Hunter acknowledged that he previously stated he first came into contact with Coleman that evening between 6:00 and 9:00 p.m.

## Standards Of Review

### I. The AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of postconviction relief without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due."

*Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

## II. Ineffective Assistance Of Counsel

All of Coleman's claims allege ineffective assistance of trial counsel.[3] Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Coleman must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Coleman must show "a reasonable probability

[3] Respondent agrees that Coleman exhausted his claims in state court, as he must prior to seeking relief under § 2254. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").

that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (stating that this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt."). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

**Discussion**

**Ground One**

Coleman argues that trial counsel was ineffective in failing to object and move for a mistrial when the prosecutor's opening statement referenced an individual named Sol Hoke, who did not testify at trial, in violation of Coleman's right to confrontation. During the opening statement, the prosecutor remarked:

> [W]ithin about three days [of the robberies], a man named Sol Hoke talked to some detectives from the Hillsborough County Sheriff's Office.

> And the evidence will show that he made some statements to these detectives which formed the basis for some investigation with regard to this defendant, Trent Coleman, with whom he's connected to some degree.

(Doc. 7-2, Ex. 6, p. 172.)

The state postconviction court held an evidentiary hearing on this ineffective assistance of trial counsel claim. Trial counsel testified that he recalled the State listed Hoke as a witness, and noted that the prosecutor's opening statement did not mention the substance of Hoke's statement. (Doc. 7-3, Ex. 17, pp. 14-15.) Thus, counsel testified, he did not believe there was any basis to object. (*Id.*, p. 15.)

The state court denied Coleman's claim:

> In ground three of his motion, the Defendant alleges counsel was ineffective for failing to object when during opening statements the prosecutor referred to statements made by nontestifying witness Sol Hoke. The Defendant alleges this violated his right to confrontation.
>
> . . .
>
> In its response, the State argued that during opening statements, both parties may refer to the evidence they think will be introduced at trial. The State argued that Mr. Hoke had indicated during deposition that the Defendant admitted to robbing the Wooden Nickel store, and therefore, there was a basis for the State to make this claim during opening statements. The State argued defense counsel did not have a basis to object at that time.
>
> At the evidentiary hearing on the Defendant's motion, trial counsel . . . testified that Mr. Hoke had been listed as a witness prior to trial. [Counsel] testified that the prosecutor did not make reference to the substance of Mr. Hoke's statements, and he did not feel there was a basis to object. After considering the testimony presented at the evidentiary hearing and the record, the Court finds counsel was not ineffective for failing to object during opening statements. As such, ground three is denied.

(Doc. 7-3, Ex. 18, pp. 1-2.)

Coleman does not establish that the state court unreasonably denied his claim. "An opening statement gives counsel the opportunity to state what evidence will be presented in order to make it easier for the jurors to understand what is to follow, and is not an occasion for argument." *United States v. Lizon-Baria*, 252 F. App'x 976, 978 (11th Cir. 2007); *see also Occhicone v. State*, 570 So.2d 902, 904 (Fla. 1990) ("Opening remarks are not evidence, and the purpose of opening argument is to outline what an attorney expects to be established by the evidence.").

Here, as counsel recalled, the State had listed Hoke as a witness. (Doc. 7-3, Ex. 23.) The State also read Hoke's name to the jury panel when listing individuals who might be called as witnesses in the trial. (Doc. 7-2, Ex. 5, p. 44.) Coleman does not establish that counsel had grounds to believe that the prosecutor's statement was based on information that would not be introduced at trial. Coleman fails to show that counsel was ineffective for not objecting at that time. *See Strickland*, 466 U.S. at 690 ("[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.").

Furthermore, although Hoke ultimately did not testify at trial, Coleman does not show that the prosecutor's mention of Hoke was improper since the content of his prospective testimony was not stated. *See, e.g.*, *United States v. Kelley*, 471 F. App'x 840, 847 (11th Cir. 2012) (stating that in order for a prosecutor's reference to an uncalled witness "to adversely affect [a defendant's] substantial rights, her remarks must have

suggested to the jury that an uncalled witness would have corroborated another witness's testimony on an important point" but concluding that "[b]ecause the prosecutor did not say what these [uncalled] witnesses would have said in their testimony, the comments were not improper" (internal citation and quotation marks omitted)).

Coleman does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. He is not entitled to relief on Ground One.

**Ground Two**

Coleman contends that trial counsel was ineffective in failing to make a hearsay objection when Detective Tony Paladini testified about law enforcement's development of Coleman as a suspect. Detective Paladini testified:

> [Q]: And with regard to your investigation in this particular case, did you have occasion to review the initial statements and police reports that were obtained in this particular case without going into what was said; but did you have the occasion to review them?
>
> [A]: Yes, sir.
>
> [Q]: And based on your review, did you obtain information relating to a Mr. Trent Coleman?
>
> [A]: Yes, sir, I did.
>
> [Q]: Based on that information, did you have occasion to develop what are known as photopacks?
>
> [A]: Yes, sir, I did.

(Doc. 7-2, Ex. 6, p. 277.)

Counsel testified at the evidentiary hearing that he did not believe any part of that questioning was subject to an objection. (Doc. 7-3, Ex. 17, p. 16.) To the extent Coleman suggests that Sol Hoke was the source of the information, counsel noted that Detective Paladini made no reference to Hoke. (*Id.*) The state court denied Coleman's ineffective assistance claim:

> The Defendant alleges in ground four of his amended motion that counsel was ineffective for failing to object to Detective Paladini's testimony regarding how the Defendant became a suspect. The Defendant asserts this testimony was inadmissible hearsay.
>
> . . .
>
> In its response to the Defendant's motion, the State argued that no reference was made to Mr. Hoke's statements during this testimony, and nothing identifies Mr. Hoke as a witness or Mr. Hoke's statement as the source of information that caused Detective Paladini to place the Defendant in the photo lineup. At the evidentiary hearing, [counsel] testified that he did not feel there was a basis to object to this line of questioning.
>
> "[W]hen the only relevance of [a witness's] statement is to show a logical sequence of events leading up to an arrest, the better practice is to allow the officer to state that he acted upon a 'tip' or 'information received,' without going into the details of the accusatory information." *State v. Baird*, 572 So.2d 904 (Fla. 1990). After reviewing the record, the State's response, and testimony presented at the evidentiary hearing, the Court finds that counsel was not ineffective for failing to object to this line of questioning. As such, ground four is denied.

(Doc. 7-3, Ex. 18, pp. 2-3.)

Coleman does not show that the state court's ruling was unreasonable. As an initial matter, to the extent that this claim's resolution depends upon an application of state evidentiary law, this Court must defer to the state court's implicit determination that this evidence was proper under state law. *Pinkney v. Secretary, DOC*, 876 F.3d 1290,

1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law." (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984))); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on [state law] – the objection would have been overruled. . . . Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.").

Additionally, as the state court observed, the questioning was permissible to show that police acted based on certain unspecified information as a way of explaining the progression of the investigation. The questioning did not elicit information beyond such an explanation, and Detective Paladini did not testify to any statement by another person. *See, e.g.*, § 90.801(1)(c), Fla. Stat. (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted").

Coleman fails to establish that the state court unreasonably determined that counsel did not perform deficiently. Nor does he show that the state court's ruling was based on an unreasonable factual determination. Coleman is not entitled to relief on Ground Two.

**Ground Three**

Coleman alleges that trial counsel was ineffective because during his cross-examination of store employee Ray Prather, counsel presented evidence establishing that Coleman was a convicted felon. Counsel asked Prather how many photos police showed him in the photopack. (Doc. 7-2, Ex. 6, p. 191.) Prather testified that he remembered one sheet containing six photos. (*Id.*) Counsel then asked Prather about his deposition testimony on this matter:

> Q. Do you remember this question and this answer being given [during deposition]. Okay. Tell me what he discussed with you before you made the identification based on the photographic lineup? ANSWER: Well, he came into my house and pulled out I think was a couple of sheets or two sheets. I don't know, probably like eight people on both sheets, each sheet and told me to just, yeah – yeah, like take my time and look at them and they were convicted people or whatever and I picked that out.
>
> A. Um-hmm. Okay.
>
> Q. Can you tell me what explains the difference between your answer today and your answer back then?
>
> A. Yeah, today I only remembered one sheet. I guess because the sheet that he showed me, I'm not sure; but, yeah, this was back in July, so my memory isn't too good.

(*Id.*, p. 192.)

Defense counsel testified at the postconviction evidentiary hearing that his strategy was to impeach Prather with his prior inconsistent statement about the number of photographs he viewed. (Doc. 7-3, Ex. 17, pp. 10, 17.) The state court denied Coleman's ineffective assistance of counsel claim:

> In ground six, the Defendant alleges counsel was ineffective for presenting evidence establishing that the Defendant was a convicted felon.
>
> . . .
>
> At the evidentiary hearing, [counsel] testified that his strategy in questioning Mr. Prather regarding his deposition testimony was to impeach the witness by bringing out the fact that his statement in his deposition was inconsistent with his testimony at trial regarding the number of photographs in the photopack. After reviewing the record, the Court finds the statement was brief and was not repeated. Based on the evidence presented at trial, the Court finds the Defendant has failed to demonstrate that there is a reasonable probability that the outcome of the trial would have been different had counsel refrained from questioning Mr. Prather regarding that portion of his statement. Therefore, ground six is denied.

(Doc. 7-3, Ex. 18, pp. 3-4.) (state court's record citations omitted)

Coleman has not shown that the state court's ruling was unreasonable. As the state court noted, the reference to Prather's deposition testimony about pictures of "convicted people or whatever" in the photopack was brief and isolated. This remark does not directly state that Coleman was convicted of a felony. Furthermore, Coleman does not show that the state court unreasonably applied *Strickland*'s prejudice prong in concluding that he failed to demonstrate a reasonable probability that the outcome of the trial would have been different but for this single remark when considering the State's overall evidence of guilt.

Coleman does not establish that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. He is not entitled to relief on Ground Three.

**Ground Four**

Coleman argues that trial counsel was ineffective for not objecting and requesting a limiting instruction that impeachment evidence cannot be considered as substantive evidence of guilt. Coleman's claim concerns the State's argument about testimony of his brother, Harold Hunter. Hunter testified that he saw Coleman at their sister's house sometime between 4:00 p.m. and 5:00 or 5:30 p.m. on the day of the robberies. (Doc. 7-2, Ex. 6, p. 324.) Hunter testified that he drove Coleman to Hunter's house at 5:30 p.m. (*Id.*, pp. 324-25.) Hunter testified that they left his house later that night, arriving at the residence of Coleman's fiancée, Aleia Amad, at around 9:00 to 9:30 p.m. (*Id.*, p. 325.) But on cross-examination, Hunter acknowledged that during his deposition, he stated the first time he came into contact with Coleman that evening was sometime after 6:00 p.m. (*Id.*, p. 327.)

During closing arguments, the State asserted that Hunter was not reliable. After addressing Hunter's inconsistent statements about the times he was with Coleman the evening of the robberies, the State argued:

> Today, now that [Hunter] realizes the significance of that time, the time has changed. He now has him picking up the defendant at 4:30 p.m. These three witnesses [Hunter, Aleia Amad and Aleia's brother Tahera Amad] are clearly biased for the defendant and are saying what they can say to help him.

(Doc. 7-2, Ex. 7, pp. 399-400.)

At the postconviction evidentiary hearing, trial counsel testified that he could not recall why he did not object or request a limiting instruction. (Doc. 7-3, Ex. 17, pp. 10-11.) The state court denied Coleman's claim:

> In ground seven, the Defendant alleges counsel was ineffective for failing to object and request a limiting instruction that impeachment evidence could not be considered as substantive evidence of guilt. At trial, the prosecutor impeached defense witness Harold Hunter regarding the times he was with the Defendant on the day of the robberies. During closing statements, the prosecutor argued Mr. Hunter changed his story after realizing the significance of those times. After reviewing the record, the Court finds that Mr. Hunter's prior inconsistent statement regarding the times he was with the Defendant on the date of the robberies did not provide any substantive evidence of the Defendant's guilt. Therefore, the Court finds the Defendant has failed to demonstrate that he was prejudiced by counsel's failure to request a limiting instruction. As such, ground seven is denied.

(Doc. 7-3, Ex. 18, p. 4.) (state court's record citations omitted)

Coleman does not show that the state court unreasonably denied his claim. As the state court observed, the State argued that Hunter was not a credible witness. But the State did not improperly use Hunter's statements as substantive evidence of Coleman's guilt. Under these circumstances, Coleman fails to show that a limiting instruction was warranted, or that there a reasonable probability of a different outcome at trial had counsel objected to the State's argument and sought a limiting instruction. Thus, because he has not established that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim, Coleman is not entitled to relief on Ground Four.

**Ground Five**

Coleman contends that trial counsel was ineffective in not moving for a judgment of acquittal on the basis that the State failed to prove that Coleman took anything of value from Ray Prather.

The state postconviction court summarily denied this claim:

> In ground eight, the Defendant argues counsel was ineffective for failing to argue in a motion for judgment of acquittal that the State failed to prove both the taking element and the element of value regarding the robbery of victim Ray Prather. To prove the offense of robbery, the State was required to prove 1) Trent Coleman took the United States currency or other personal property from the person or custody of Ray Prather, 2) force, violence, assault or putting in fear was used in the course of the taking, 3) the property taken was of some value, and 4) the taking was with the intent to permanently or temporarily deprive Mr. Prather of his right to the property or any benefit from it, or to appropriate it to his own use or the use of any person not entitled to it. At trial, Mr. Prather testified that he took his keys and cell phone out of his pockets and threw them on the ground in response to the Defendant's demand for him to empty his pockets. The State argued that by having Mr. Prather empty his pockets, Mr. Prather was deprived of his property at least temporarily. The Court finds the Defendant has failed to demonstrate that a motion for judgment of acquittal on these grounds would have been granted. As such, ground Eight is denied.

(Doc. 7-3, Ex. 15, pp. 6-7.) (state court's record citations omitted).

Coleman does not show that the state court unreasonably denied his claim. In reviewing the motion for judgment of acquittal, the state court was required to consider the evidence in the light most favorable to the state. *See Boyd v. State*, 910 So.2d 167, 180 (Fla. 2005) ("A trial court should not grant a motion for judgment of acquittal 'unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law.'" (quoting *Lynch v. State*, 293 So.2d 44, 45 (Fla. 1974))); *Odom v. State*, 862 So.2d 56, 59 (Fla. 2d DCA 2003) ("A trial court should not grant a motion for judgment of acquittal unless the evidence, when viewed in a light most favorable to the State, fails to establish a prima facie case of guilt.").

At trial, Prather testified that Coleman held the gun inches from him, pointed it at his chest, and asked for money. (Doc. 7-2, Ex. 6, pp. 181-82.) Prather did not have his wallet on his person, so he emptied his pockets and threw his keys and cell phone on the ground. (*Id.*, p. 181.) The State contended that it had proved the elements of robbery by showing that Prather was temporarily deprived of his property. (Doc. 7-2, Ex. 7, p. 395.)

Coleman does not show that counsel was ineffective for not arguing that the State failed to prove he took property of some value from Prather. Coleman appears to argue that the State failed to establish a "taking" because Coleman did not assume physical possession of Prather's keys and phone. But Prather took these items out of his pockets and threw them on the ground while Coleman pointed a gun at Prather and demanded money. Coleman fails to establish that, under Florida law, there is no "taking" if the perpetrator does not take physical possession of property when the victim gives up the property at the perpetrator's direction. *See, e.g.*, *Johnson v. State*, 432 So.2d 758, 759 (Fla. 1st DCA 1983) (finding the taking element satisfied when a store clerk "was required by appellant and his accomplice to remove the money" from its location and place a bag containing the money on a counter in front of them, and stating that "[t]his would be so even if the appellant had not, as the victim testified, momentarily touched the bag").

Nor does Coleman show that the items were not of some value, as required to establish robbery. Under Florida law, the offense of robbery only requires that the property be "of some value," and the State need not prove a precise value. *See Holland*

*v. State*, 319 So.2d 577, 577 (Fla. 1st DCA 1975) ("The crime of robbery does not depend on the kind or value of the property taken. The gist of the crime is the felonious taking by the accused of property of another by force and putting in fear."). The State presented evidence that Coleman temporarily deprived Prather of his cell phone and keys. Coleman does not establish that those items are not "of some value."

Thus, Coleman fails to show a reasonable probability that the state court would have granted the motion for judgment of acquittal, when considering the evidence in the light most favorable to the State, had counsel raised the proposed arguments. Coleman has not demonstrated that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. He is not entitled to relief on Ground Five.

It is therefore **ORDERED** that Coleman's petition (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Coleman and to **CLOSE** this case.

## Certificate Of Appealability And Leave To Appeal *In Forma Pauperis* Denied

It is further **ORDERED** that Coleman is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a COA must first issue. *Id*. "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. at § 2253(c)(2). To obtain a certificate of appealability, Coleman must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the

procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Coleman has not made the requisite showing. Finally, because Coleman is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on August 2, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE